UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------
JOSE R.M.,

                         Plaintiff,        <u>DECISION AND ORDER</u>
                                         1:25-cv-01840-GRJ

        v.

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
-------------------------------------------------------
GARY R. JONES, United States Magistrate Judge:

In August of 2021, Plaintiff Jose R.M.[1] applied for Disability Insurance

Benefits under the Social Security Act. The Commissioner of Social

Security denied the application.  Plaintiff, represented by Ny Disability, LLC,

Daniel Berger, Esq., of counsel, commenced this action seeking judicial

review of the Commissioner's denial of benefits under 42 U.S.C. §§ 405 (g)

and 1383 (c)(3).  The parties consented to the jurisdiction of a United

States Magistrate Judge. (Docket No. 8).

This case was referred to the undersigned on December 10, 2025.

Presently pending is Plaintiff's Motion for Judgment on the Pleadings

pursuant to Rule 12 (c) of the Federal Rules of Civil Procedure. (Docket

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

No. 12). For the following reasons, Plaintiff's motion is due to be granted, the Commissioner's decision is reversed, and this matter is remanded for calculation of benefits.

## I. BACKGROUND

### A.    Administrative Proceedings

Plaintiff applied for benefits on August 6, 2021, alleging disability beginning January 1, 2015. (T at 90-91, 103, 300-12).[2]  Plaintiff's application was denied initially and on reconsideration.  He requested a hearing before an Administrative Law Judge ("ALJ").

A hearing was held on August 31, 2022, before ALJ Ifeoma Iwuamadi. (T at 43-60). Plaintiff appeared with an attorney and testified with the assistance of an interpreter. (T at 49-56). During the hearing, Plaintiff's alleged onset date was amended to January 1, 2018. (T at 48-49).  The ALJ also received testimony from Robert Baker, a vocational expert. (T at 56-59).

### B.    ALJ's Decision

On October 18, 2022, the ALJ issued a decision denying the application for benefits. (T at 14-42).  The ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2018 (the amended

---

[2] Citations to "T" refer to the administrative record transcript at Docket No. 9.

alleged onset date) and met the insured status requirements of the Social Security Act through September 30, 2020 (the date last insured). (T at 22).

The ALJ concluded that, as of the date last insured, Plaintiff's hypertension, generalized anxiety disorder, panic disorder with agoraphobia, major depressive disorder with psychotic features, tachycardia, borderline glaucoma, obstructive sleep apnea, and lumbar spine degeneration were severe impairments as defined under the Act. (T at 22-23).

However, the ALJ found that, as of the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 403, Subpart P, Appendix 1. (T at 23).

At step four of the sequential analysis the ALJ determined that, as of the date last insured, Plaintiff retained the residual functional capacity ("RFC") to perform light work, as defined in 20 CFR 404.1567 (b), with the following limitations: he can perform no more than occasional climbing of ramps and stairs; cannot climb ladders, ropes, or scaffolds; cannot kneel, crouch, or crawl; and can engage in no more than occasional performance of depth perception. (T at 26).

In addition, the ALJ found Plaintiff capable of making simple work-related decisions in a routine work setting with only occasional changes and no more than occasional contact with supervisors, co-workers, and the public. (T at 26).

The ALJ concluded that, as of the date last insured, Plaintiff could not perform his past relevant work as a porter. (T at 35).  However, considering Plaintiff's age (54 on the date last insured), education (at least high school), work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform as of the date last insured. (T at 35).

As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, and was not entitled to benefits for the period between January 1, 2018 (the amended alleged onset date) and September 30, 2020 (the date last insured). (T at 36).

On October 6, 2023, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (T at 1-8).

C.    *Procedural History*

Plaintiff commenced this action, by and through his counsel, by filing a Complaint on March 5, 2025. (Docket No. 1).  On August 8, 2025, Plaintiff filed a motion for judgment on the pleadings, supported by a memorandum of law. (Docket Nos. 12, 13).  The Commissioner interposed a brief in opposition to the motion and in support of request for judgment on the pleadings on November 18, 2025. (Docket No. 16).  On November 25, 2021, Plaintiff submitted a reply memorandum of law in further support of his motion. (Docket No. 17).

## II.  APPLICABLE LAW

A.    *Standard of Review*

"It is not the function of a reviewing court to decide de novo whether a claimant was disabled."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). The court's review is limited to "determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard."  *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla"

and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

### B.     Five-Step Sequential Evaluation Process

Under the Social Security Act, a claimant is disabled if he or she lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last

for a continuous period of not less than 12 months ...."  42 U.S.C. § 423(d)(1)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a five-step sequential analysis:

1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.

4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*See Rolon v. Commissioner of Soc. Sec.*, 994 F. Supp. 2d 496, 503 (S.D.N.Y. 2014); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the burden shifts to the Commissioner at step five. *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner determines whether claimant can perform work that exists in significant numbers in the national economy. *See Butts v. Barnhart*, 416 F.3d 101, 103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

### III.  DISCUSSION

Plaintiff raises two main arguments in support of his request for reversal of the ALJ's decision.  First, Plaintiff argues that the ALJ's assessment of the medical opinion evidence was flawed, which undermines the RFC determination regarding his mental functioning. Second, he challenges the ALJ's consideration of his subjective complaints. The Court will address each argument in turn.

### A.    Medical Opinion Evidence

"Regardless of its source, the ALJ must evaluate every medical opinion in determining whether a claimant is disabled under the [Social Security] Act." *Pena ex rel. E.R. v. Astrue*, No. 11-CV-1787 (KAM), 2013 WL 1210932, at *14 (E.D.N.Y. Mar. 25, 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(d) (2020)) (internal quotation marks omitted).

In January of 2017, the Social Security Administration promulgated new regulations regarding the consideration of medical opinion evidence. The revised regulations apply to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c.  Because Plaintiff's application for benefits was filed after that date, the new regulations apply here.

The ALJ no longer gives "specific evidentiary weight to medical opinions," but rather considers all medical opinions and "evaluate[s] their persuasiveness" based on supportability, consistency, relationship with the claimant, specialization, and other factors. See 20 C.F.R. § 404.1520c (a), (b)(2).   The ALJ is required to "articulate how [he or she] considered the medical opinions" and state "how persuasive" he or she finds each opinion, with a specific explanation provided as to the consistency and supportability factors. See 20 C.F.R. § 404.1520c (b)(2).

Consistency is "the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources." *Dany Z. v. Saul*, 531 F. Supp. 3d 871, 882 (D. Vt. 2021)(citing 20 C.F.R. § 416.920c(c)(2)).  The "more consistent a medical opinion" is with "evidence from other medical sources and nonmedical sources," the "more persuasive the medical opinion" will be. See 20 C.F.R. § 404.1520c(c)(2).

Supportability is "the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations." *Dany Z*, 531 F. Supp. 3d at 881. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520 (c)(1), 416.920c(c)(1).

In the present case, several medical providers offered assessments regarding Plaintiff's mental functioning.

In August of 2021, Yuly Thomas, LMHC and Dr. Miguel Hernandez completed a medical source statement.  They represented that Plaintiff had been treated monthly for medication management and psychotherapy. (T at 424).  Ms. Thomas and Dr. Hernandez diagnosed major depressive disorder, sleep apnea, and panic disorder. (T at 424).  They opined that Plaintiff would be absent from work more than 3 times per month due to his treatment or impairments. (T at 425).

Ms. Thomas and Dr. Hernandez opined that Plaintiff had marked or extreme limitation in his ability to understand, remember, or carry out instructions; moderate to marked impairment with respect to social

interaction; frequent deficiencies of concentration, persistence, or pace; and continual episodes of deterioration or decompensation in work or work-like settings. (T at 426-27).

In November of 2021, Dr. Abrah Sprung performed a consultative psychiatric evaluation.  Dr. Sprung diagnosed panic disorder and major depressive disorder (recurrent, severe with psychotic features). (T at 533). Dr. Sprung assessed moderate limitation in Plaintiff's ability to understand, remember, and apply simple directions and instructions; use reason and judgment to make work-related decisions; and have awareness of normal hazards and take appropriate precautions. (T at 533).

Dr. Sprung opined that Plaintiff had moderate to marked impairment with respect to: understanding, remembering, or applying complex directions or instructions; interacting with others; sustaining an ordinary routine and regular attendance at work; and regulating emotions, controlling behavior, and maintaining well-being. (T at 533).

Alexandra Nunez, MHC-LP, completed a medical source statement in February of 2024.  She reported treating Plaintiff twice a month for psychotherapy and diagnosed memory impairment, major depressive disorder, obstructive sleep apnea, panic disorder (episodic), and panic disorder (agoraphobia). (T at 1165).

11

Ms. Nunez opined that Plaintiff would be absent from work more than 3 times per month due to his treatment or impairments. (T at 1166). Ms. Nunez assessed moderate restriction in Plaintiff's activities of daily living; marked limitation in maintaining social functioning; and frequent deficiencies of concentration, persistence, or pace. (T at 1167-69). She opined that Plaintiff had extreme impairment in dealing with work stress and in completing a normal workday or workweek without interruption from psychologically based symptoms. (T at 1167).

Dr. Michael Correa, Plaintiff's primary care provider, completed a medical source statement in February of 2024. Although mainly offering an assessment of Plaintiff's physical functioning, Dr. Correa also stated that Plaintiff had severe limitation in his ability to deal with work stress and would be absent from work frequently because of his impairments or treatment. (T at 1160, 1164).

As noted above, the ALJ concluded that Plaintiff retained the RFC to meet the mental demands of a range of work (i.e., work involving simple decisions, with only occasional changes in the work setting and occasional social interaction). (T at 26). In reaching this conclusion, the ALJ did not find any of the medical opinions fully persuasive. (T at 31-35).

For the following reason, the Court finds that the ALJ's assessment of the medical opinion evidence cannot be sustained.

First, the ALJ considered the fact that Ms. Thomas, Ms. Nunez, Dr. Hernandez, and Dr. Correa were treating providers, with the opportunity to interact with and observe Plaintiff over an extended period.

The Second Circuit has long recognized the particular importance of treating source opinions when reviewing claims involving mental impairments. *See Flynn v. Comm'r of SSA*, 729 F. App'x 119, 122 (2d Cir. 2018)("The treatment provider's perspective would seem all the more important in cases involving mental health, which are not susceptible to clear records such as [x-rays] or MRIs. Rather, they depend almost exclusively on less discretely measurable factors, like what the patient says in consultations.").

Although the treating physician rule is no longer in effect, this important principle persists, as the opportunity to observe and treat the claimant constitutes important "support" for a medical opinion under the new standard. *See, e.g., Raymond M. v. Comm'r of Soc. Sec.*, No. 5:19-CV-1313 (ATB), 2021 WL 706645, at *8-9 (N.D.N.Y. Feb. 22, 2021).

"As the amended regulations note, '[a] medical source may have a better understanding of your impairment(s) if he or she examines you than

13

if the medical source only reviews evidence in your folder.'" *Id.* (quoting 20 C.F.R. §§ 404.1520c(c)(3)(v), 416.920c(c)(3)(v)); *see also* A*costa Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-0502 (AJN) (KHP), 2021 WL 363682, at *9 (S.D.N.Y. Jan. 29, 2021), *report and recommendation adopted sub nom. Cuevas v. Comm'r of Soc. Sec.*, No. 20CV0502KMWKHP, 2022 WL 717612 (S.D.N.Y. Mar. 10, 2022), at *25-26 (S.D.N.Y. Jan. 29, 2021)("A survey of … cases … show[s] that while the treating physician's rule was modified, the essence of the rule remains the same, and the factors to be considered in weighing the various medical opinions in a given claimant's medical history are substantially similar.")(collecting cases).

"Even though ALJs are no longer directed to afford controlling weight to treating source opinions—no matter how well supported and consistent with the record they may be—the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating source's] opinion.'" *Shawn H. v. Comm'r of Soc. Sec.*, No. 2:19-CV-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020)(quoting *Barrett v. Berryhill*, 906 F.3d 340, 343 (5th Cir. 2018)).

Second, the ALJ erred by discounting the treating and consulting source opinions as inconsistent with her lay reading of the record without

14

accounting for the significance of the consistency of the assessments *with each other*. *See Shawn H.* 2020 WL 3969879, at *7 ("Moreover, the ALJ should have considered that the opinions of Stephens and Dr. Lussier are consistent with each other."); *Malia Ann B. v. Comm'r of Soc. Sec.*, No. 5:21-CV-1362-AMN-CFH, 2023 WL 2838054, at *7 (N.D.N.Y. Feb. 23, 2023), *report and recommendation adopted*, No. 5:21-CV-1362-AMN-CFH, 2023 WL 2623865 (N.D.N.Y. Mar. 24, 2023)(collecting cases holding that "the ALJ is obligated to discuss the consistency of a medical opinion with the other evidence in the record, which necessarily includes other medical opinions").

Third, the ALJ overrated the relevance of Plaintiff's ability to maintain appropriate attendance and affect during relatively brief, relatively infrequent (weekly or monthly) encounters with supportive mental health professionals.

The Commissioner's regulations recognize that a claimant's "ability to complete tasks in settings that are highly structured, or that are less demanding or more supportive than typical work settings does not necessarily demonstrate [her] ability to complete tasks in the context of regular employment during a normal workday or work week."  20 C.F.R. Subpt. P, App. 1 § 12.00 (C) (6) (b); *see also Primo v. Berryhill*, 17 Civ.

15

6875, 2019 U.S. Dist. LEXIS 27074, at *31 (S.D.N.Y. Feb. 19, 2019)(noting that ALJs must recognize that "the effects of a mental health issue may be different in a work setting than in a non-work setting"); *Flynn v. Comm'r of Soc. Sec. Admin.*, 729 Fed. Appx. 119, 121 (2d Cir. 2018)(decision to discount opinion based on treatment notes indicating claimant was "well-groomed and with calm affect" was "an assessment ... beyond the scope of the ALJ's authority").

The primary determination in this case is the extent to which Plaintiff's symptoms would be expected to be exacerbated if he was exposed to the demands of competitive, remunerative work on a consistent basis.  The emphatic judgment of the treating and examining providers was that Plaintiff would decompensate and be unable to perform key duties, including coping with stress, regulating emotions, and sustaining a schedule.  (T at 425-27, 533, 1164, 1166, 1168).

The ALJ's decision to discount the unified judgment of the treating and examining medical professionals based on her lay reading of the record does not reflect a proper application of the medical opinion standard. *See Stacey v. Comm'r of SSA*, 799 F. Appx. 7, 11 (2d Cir. 2020)("It would be improper to rely on these mental status evaluations to conclude that Stacey is capable of prolonged concentration while

simultaneously ignoring the contrary conclusion of the very physicians who made the evaluations.").

Moreover, although Plaintiff was generally described as appropriate and cooperative, the records document a person with significant symptoms and limitations, including anxiety, panic attacks, paranoia, depression, auditory hallucinations, and agoraphobia. (T at 409, 413, 681, 685, 1631-32, 1633, 1904, 1909, 1917, 1921, 1925, 1928, 1931, 1934, 1937, 1940, 1943, 1948).  *See Stacey* 799 F. Appx. at 10 (cautioning "ALJs against scouring medical notes to draw their own conclusions based on isolated descriptions"); *Gough v. Saul*, 799 F. Appx. 12, 14 (2d Cir. 2020)("We fear that the ALJ cherry-picked evidence from the record to support his conclusion that Gough could work full time even though the record as a whole suggested greater dysfunction.").

Fourth, the ALJ placed undue emphasis on the lack of episodes of decompensation and psychiatric hospitalization, particularly since Plaintiff lives a structured life, engages in limited activities, and relies on significant support from his wife and daughter. (T at 49-55).

It is well-settled that a claimant "need not be an invalid to be found disabled" and should not be punished for exerting the effort to attend to

17

basic necessities of life. *See Balsamo v. Chater*, 142 F.3d 75, 81-82 (2d Cir. 1998).

Moreover, as discussed above, the treatment record documents significant symptoms persisting over time.  Plaintiff's ability to attend to basic activities in a structured, solitary environment does not translate into the ability to perform competitive work on a consistent basis. *See Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019); *Samaru v. Comm'r of Soc. Sec.*, No. 18CV06321KAMLB, 2020 WL 3051576, at *10 (E.D.N.Y. June 8, 2020)("The critical differences between activities of daily living and activities in a full time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons …, and is not held to a minimum standard of performance, as she would be by an employer.")(quoting *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)).

Lastly, the Commissioner defends the ALJ's decision by noting that the treatment records and medical opinion evidence were largely generated after the date last insured.  Notably, however, there is no evdience that Plaintiff's symptoms materially changed after the date last insured and the treating providers reported that Plaintiff's limitations had been present since at least June of 2018. (T at 427, 1168). *See Caldwell v. Comm'r of Soc.*

*Sec.*, No. 19-CV-6534 (OTW), 2020 WL 6162133, at *5 (S.D.N.Y. Oct. 21, 2020), *aff'd,* No. 20-4077-CV, 2022 WL 728661 (2d Cir. Mar. 11, 2022)("Diagnosis of a claimant's condition for social security disability benefits may properly be made even several years after the actual onset of the impairment and such diagnosis must be evaluated in terms of whether, considered in light of entire record, it establishes … impairment.").

In sum, the ALJ's conclusion that Plaintiff could meet the mental demands of a range of competitive, remunerative work on a sustained basis is contrary to the unified judgment of the treating and examining medical professionals and cannot be sustained for the reasons discussed above.

### B.    Subjective Complaints

A claimant's subjective complaints of pain and limitation are "an important element in the adjudication of [social security] claims and must be thoroughly considered in calculating the [RFC] of a claimant." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (citation omitted); *see also* 20 C.F.R. § 416.929. However, "the ALJ is … not required to accept the claimant's subjective complaints without question." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citations omitted). Rather, the ALJ "may exercise discretion in weighing the credibility of the claimant's testimony in

light of other evidence in the record." *Id*. (citation omitted); *see also*

*Henningsen v. Comm'r of Soc. Sec.*, 111 F. Supp. 3d 250, 267 (E.D.N.Y.

2015) ("The ALJ retains discretion to assess the credibility of a claimant's

testimony regarding disabling pain and 'to arrive at an independent

judgment, in light of medical findings and other evidence, regarding the true

extent of the pain alleged by the claimant.'" (quoting *Marcus v. Califano*,

615 F.2d 23, 27 (2d Cir. 1979)).

The ALJ follows a two-step process in evaluating a claimant's

subjective complaints.

First, "the ALJ must decide whether the claimant suffers from a

medically determinable impairment that could reasonably be expected to

produce the symptoms alleged." *Genier*, 606 F.3d at 49 (citation omitted).

Second, "the ALJ must consider the extent to which the claimant's

symptoms can reasonably be accepted as consistent with the objective

medical evidence and other evidence of record." *Id*. (citation, alterations,

and quotation marks omitted). The ALJ must "consider all of the available

medical evidence, including a claimant's statements, treating physician's

reports, and other medical professional reports." *Fontanarosa v. Colvin*, No.

13-CV-3285, 2014 U.S. Dist. LEXIS 121156, at *36 (E.D.N.Y. Aug. 28,

2014) (citing *Whipple v. Astrue*, 479 F. App'x 367, 370-71 (2d Cir. 2012)).

20

If the claimant's allegations of pain and limitation are "not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Meadors*, 370 F. App'x at 184. This inquiry involves seven (7) factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain. *See* 20 C.F.R. § 404.1529(c)(3)(i)-(vii)).

If the ALJ discounts the claimant's subjective complaints, the ALJ "must explain the decision to reject a claimant's testimony "with sufficient specificity to enable the [reviewing] Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether [the ALJ's] decision is supported by substantial evidence." *Calzada v. Astrue*, 753 F. Supp. 2d 250, 280 (S.D.N.Y. 2010)(alterations in original, citations omitted).

Here, Plaintiff testified as follows: He lives with his wife and daughter. (T at 49). He cannot work due to back pain, panic attacks, depression, and anxiety. (T at 51). He does not drive or use public transportation due to

panic attacks. (T at 51-52, 54).  He takes medication for anxiety and depression and sees a therapist twice a month. (T at 53-54).  Panic attacks occur approximately three times per month and he rarely leaves the house. (T at 53-54).  His wife and daughter attend to the household chores. (T at 54-55).  He only socializes with his family and has difficulty concentrating. (T at 56).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but concluded that Plaintiff's statements as to the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the record. (T at 28).

Plaintiff's subjective complaints, particularly regarding his panic attacks, difficulty leaving home, and social impairment, are consistent with, and supported by, all the treating and examining medical opinions.  The ALJ's decision to discount those complaints is fatally undermined by the errors in her assessment of the medical opinion evidence, as outlined above.

C.    Remand

A court reviewing the denial of benefits may, in its discretion, remand a claim for further proceedings, or solely for the calculation of benefits. 42

U.S.C. § 405(g) (sentence four) (a reviewing court may enter, upon the pleadings and the administrative record, "a judgment affirming, modifying, or reversing the decision of the Commissioner ... with or without remanding the cause for a rehearing").

Where the record is complete and contains persuasive proof of disability, "no purpose would be served" by additional administrative proceedings and remand for calculation of benefits is warranted. *Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir.2000).

Here, the record is complete and contains persuasive proof of disabling mental limitations, as evidenced by multiple medical opinions from providers with the opportunity to observe, examine, and treat Plaintiff.

The Commissioner does not articulate any purpose that would be served by further administrative proceedings and this Court finds none. A remand for calculation of benefits is, therefore, the appropriate remedy.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings (Docket No. 12) is GRANTED, the Commissioner's denial of

benefits is REVERSED, and this matter is REMANDED for calculation of benefits. The Clerk is directed to enter judgment in favor of the Plaintiff and then close the file.

Dated: March 2, 2026                    *s/ Gary R. Jones*
                                        GARY R. JONES
                                        United States Magistrate Judge